UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DESIREE A. MATTISON,<br><br>        Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>        Defendant. | CASE NO.    C06-5281RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 1, 2006 |

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint for judicial review of the denial of her application for disability insurance benefits (Dkt. #8) and plaintiff's motion to strike portions of the declaration of A. Yvette Dunaway attached to defendant's motion (Dkt. # 13). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' motions, responses and replies thereto, and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

REPORT AND RECOMMENDATION
Page - 1

I.   <u>Plaintiff's Motion to Strike</u>

In support of her motion to dismiss plaintiff's complaint, defendant attached the declaration of A. Yvette Dunaway, the Acting Chief of the Social Security Administration's Court Case Preparation and Review Branch I of the Office of Appellate Operations, Office of Disability Adjudication and Review. <u>See</u> Declaration of A. Yvette Dunaway, p. 1 (Dkt. #9-1). Ms. Dunaway stated that in that position she was responsible for processing disability insurance claims whenever a civil action had been filed in the State of Washington. <u>Id.</u>, p. 3, ¶ (4). Ms. Dunaway further stated that the file maintained by the Office of Disability Adjudication and Review concerning plaintiff was in her legal custody at the time of her declaration and had been examined under her supervision. <u>Id.</u> Ms. Dunaway went on to state in relevant part:

(a)   The plaintiff received Disability Insurance Benefits from December 1985 through October 1988. Her benefits were terminated due to her return to work. A trial work period was involved.

(b)   On August 30, 1993, the plaintiff filed a claim for Disability Insurance Benefits which was medically denied on October 22, 1993.

(c)   The plaintiff filed a subsequent claim for Disability Insurance Benefits on May 13, 1996[,] which was denied on May 21, 1996, based on the doctrine of res judicata.

(d)   The plaintiff filed her current application for Disability Insurance Benefits on July 31, 2000, which was denied initially on August 6, 2000[,] on the basis of res judicata (Exhibit 1). No new evidence was submitted with this application.

<u>Id.</u>

As part of her response to defendant's motion to dismiss, plaintiff filed a motion to strike these portions of Ms. Dunaway's declaration on the basis that they constitute hearsay, and as such are barred under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, which reads in relevant part as follows:

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Plaintiff thus asserts that while defendant's motion "is couched in terms being on the

REPORT AND RECOMMENDATION
Page - 2

grounds of failure to exhaust administrative remedies and for lack of subject matter jurisdiction, it really is a motion to dismiss on the single ground of *res judicata*," and therefore that Fed. R. Civ. P. 56, which deals with summary judgment motions, governs here. Plaintiff's Motion & Memorandum to Strike Portions of Declaration of A. Yvette Dunaway, p. 2.

Defendant counters that Fed. R. Civ. P. 56 does not apply, as the motion she filed is a motion to dismiss for lack of subject-matter jurisdiction, and thus does not require the Court to address plaintiff's case on its merits. See Fed. R. Civ. P. 56(c)("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). The Court agrees.

Fed. R. Civ. P. 12(b) provides in relevant part that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter." Because no responsive pleading has been filed, such a motion is appropriate at this stage of the proceedings. Fed. R. Civ. P. 12(b). While it is true that the issue of *res judicata* is involved here, the primary issue, and the central one with which defendant's motion is concerned, is whether this Court in the first place has the authority to review defendant's denial of plaintiff's application for disability benefits on the basis of *res judicata*.

Judicial review of the Commissioner's administrative decisions is governed by Section 405(g) of the Social Security Act, which reads in relevant part:

> Any individual, after any *final decision* of the Commissioner of Social Security *made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

42 U.S.C. § 405(g) (emphasis added); see also Udd v. Massanari, 245 F.3d 1096, 1098 (9th Cir. 2001) (judicial review limited to final decision made after hearing).

The Commissioner may apply administrative *res judicata* "to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996). In general, the Commissioner's refusal to reopen a decision

REPORT AND RECOMMENDATION
Page - 3

regarding an earlier period "is not subject to judicial review." Id. This is because, once an administrative decision becomes final, the Commissioner's decision to reopen a disability claim is "purely discretionary." Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985). Further, since a discretionary decision is not a "final decision" within the meaning of 42 U.S.C. § 405(g), the Commissioner's refusal to reopen that decision "is not a 'final' decision subject to judicial review." Id. (citations omitted).

One exception to the above rule, which is relevant to this case as explained in further detail below, is "'where the [Commissioner's] denial of a petition to reopen is challenged on constitutional grounds.'" Udd, 245 F.3d at 1096. Nevertheless, before getting to the issue of whether *res judicata* has been properly applied, as noted above the Court first must determine whether it can even consider the Commissioner's decision to apply that doctrine under this or another exception. In other words, the first and foremost issue confronting the Court is whether federal subject-matter jurisdiction exists.

As such, defendant's motion is properly viewed here as a motion to dismiss under Fed. R. Civ. P. 12(b)(1), rather than as a motion for summary judgment. For that reason, the prohibition against use of hearsay set forth by Fed. R. Civ. P. 56(e) does not apply here. Accordingly, the undersigned shall consider the declaration of A. Yvette Dunaway as well as the declaration of Dennis V. Ford attached to defendant's response to plaintiff's motion to strike and reply to plaintiff's response to defendant's motion to dismiss, and the other exhibits submitted to the Court by both parties. Needless to say, in doing so, the undersigned recommends the Court deny plaintiff's motion to strike.

II.  Factual and Procedural Background

As just noted, along with the declaration of Ms. Dunaway, defendant has submitted the declaration of Mr. Ford, who apparently has replaced Ms. Dunaway as the Social Security Administration's Acting Chief of Court Case Preparation and Review Branch I of the Office of Appellate Operations, Office of Disability Adjudication and Review. Declaration of Dennis V. Ford ("Ford Declaration"), p. 1 (Dkt. #16). As such, Mr. Ford states he now has legal control of plaintiff's file, which he further states also has been examined under his supervision. Id., p. 3, ¶ (4). Mr. Ford relates essentially the same procedural history regarding plaintiff's case as Ms. Dunaway did in her declaration noted above, but includes the following additional information:

(a) Computer records show that the plaintiff was found to be disabled beginning June 15, 1985, and became entitled to Disability Insurance Benefits beginning

> December 1985. The records further show that subsequently, it was determined that she was no longer disabled, and her entitlement to benefits was terminated October 1988. In view of the remoteness of these actions, the files pertaining to the claimant's application and subsequent events are no longer available, as they have been destroyed.

Id. at pp. 3, ¶ (4); see also Order of Dismissal, p. 1, Exhibit 4, attached to Declaration of A. Yvette Dunaway ("Dunaway Declaration") (wherein ALJ states that plaintiff's disability insurance benefits were terminated due to her return to work involving a trial work period).

In their declarations, both Ms. Dunaway and Mr. Ford further state as follows:

(e)  On October 5, 2000[,] the plaintiff filed a request for reconsideration which was denied on June 6, 2003 (Exhibit 2).

(f)  On June 24, 2003[,] the plaintiff filed a request for hearing (Exhibit 3).

(g)  On January 18, 2005, an Administrative Law Judge [("ALJ")] issued an order dismissing the plaintiff's request for hearing (Exhibit 4). Thereafter, the plaintiff filed a request for review.

(h)  On March 24, 2006, the Appeals Council denied the request for review of the Administrative Law Judge's dismissal (Exhibit 5).

(i)  On May 24, 2006, a civil action was filed in the United States District Court for the Western District of Washington-Seattle.

Dunaway Declaration, pp. 3-4, ¶ (4); Ford Declaration, pp. 4, ¶ (4); see also Exhibits 1-5 attached to Dunaway Declaration.

In her motion to dismiss, defendant argues that because the ALJ dismissed plaintiff's most recent application without a hearing on the basis of administrative *res judicata* (see Order of Dismissal, Exhibit 4 attached to Dunaway Declaration), no final decision after a hearing was issued. Defendant further argues that because plaintiff failed to completely exhaust her administrative remedies and has not alleged any colorable constitutional claim, this Court has no subject-matter jurisdiction to review the Commissioner's finding of *res judicata*. Plaintiff asserts that she has asserted a colorable constitutional claim, and that the circumstances of this case at the very least warrant a remand to the Commissioner for re-consideration of whether the denials of her prior applications and termination of benefits should be reviewed.

For the reasons set forth below, the undersigned finds that no final decision after a hearing was issued by the Commissioner concerning plaintiff's most recent application for disability insurance benefits and that plaintiff failed to completely exhaust her administrative remedies. The undersigned further finds, however, that the record reveals plaintiff has alleged a colorable constitutional claim. The undersigned,

therefore, recommends defendant's motion to dismiss be denied, and that this matter be remanded to the Commissioner to re-consider whether plaintiff's prior applications should be re-opened in accordance with the findings contained herein.

III.  Colorable Constitutional Claim

   A.  Standard of Review

As noted above, the decision to apply administrative *res judicata* "to bar reconsideration of a period with respect to which" the Commissioner "has already made a determination, by declining to reopen the prior application," is "not subject to judicial review." Lester, 81 F.3d at 827. This is because the decision to reopen a disability claim is "purely discretionary," and thus is not a "final decision" within the meaning of 42 U.S.C. § 405(g). Taylor, 765 F.2d at 877. Neither party disputes that the ALJ's decision to dismiss plaintiff's most recent application for disability insurance benefits without a hearing was a discretionary decision, and thus was not a "final decision" within the meaning of 42 U.S.C. § 405(g).

As noted above, however, the parties do dispute whether a valid constitutional claim has been raised, such that this matter falls within one of the exceptions to the above rule prohibiting judicial review. See Udd, 245 F.3d at 1096. This exception – i.e., "'where the [Commissioner's] denial of a petition to reopen is challenged on constitutional grounds.'" – "applies to any colorable constitutional claim of due process violation that 'implicate[s] a due process right [either] to a meaningful opportunity to be heard' . . . or to seek reconsideration of an adverse benefits determination." Id.; Evans v. Chater, 110 F.3d 1480, 1483 (9th Cir. 1997) (citation omitted).

A constitutional challenge "that is not 'wholly insubstantial, immaterial, or frivolous' raises a colorable constitutional claim." Udd, 245 F.3d at 1099 (citation omitted). On the other hand, "[s]imply couching in constitutional language what is in reality an argument" that the Commissioner abused her "discretion in refusing to re-open a claim, does not convert the argument into a colorable constitutional challenge." Ingram v. Secretary of Health and Human Services, 830 F.2d 67 (6th Cir. 1987); see also Davis v. Schweiker, 665 F.2d 934, 936 (9th Cir. 1982) (finding constitutional allegation that was purely discretionary and unsupported by facts to be insufficient). The standard for asserting such a challenge, however, is not particularly high. See Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001) (because claimant claimed he lost benefits because he was denied due process, and cited arguably relevant case law in

support of his due process claim, he satisfied this standard).

B.     Plaintiff's Claim

A constitutional claim is colorable where the claimant "alleges that a prior determination should be reopened because he suffered from a mental impairment and was not represented by counsel at the time of the denial of benefits." Udd, 245 F.3d at 1099 (noting though that lack of representation is not required to state colorable constitutional claim).  In her motion to dismiss, defendant first asserts plaintiff's complaint does not allege a constitutional challenge to the dismissal of her hearing request.  However, a plain reading of the complaint, which reads in relevant part below, belies this assertion:

> 8.     Application of the administrative *res judicata* in Ms. Mattison's situation constitutes a violation of due process and is inappropriate [sic] that the basis of Ms. Mattison's disability is a significant and severe brain injury, which is likely the very reason that she probably was unable to appreciate the significance of not filing an appeal of prior decisions. . . .
>
> 13.    The summary dismissal of plaintiff's claim by the Administrative Law Judge which was rendered on January 18, 2005, without affording the claimant the opportunity to present evidence on why she was unable to timely appeal her earlier denials which, if afforded her, would have demonstrated that Ms. Mattison's failure to file a timely appeal of prior adjudications was as a direct result of her disabling condition.  Such a failure to allow the plaintiff to present evidence of the affect her condition had on her ability to cognitively appreciate the consequences of her failure to file a timely appeal and not to allow her leave to file a late appeal of earlier denials is a denial of her due process rights.

Complaint, p. 3.

Clearly, then, plaintiff has raised the issue of a violation of her due process rights.  Further, while not specifically alleging that her failure to timely appeal the Commissioner's adjudications of her prior applications was due to a "mental" impairment, the complaint does reference the effect plaintiff's condition had on her "ability to cognitively appreciate" the consequences of failing to file a timely appeal.  It also hardly can be argued that a constitutional claim, such as the one here, which is based on the presence of a "significant and severe brain injury," fails to implicate significant mental functional impairments and/or limitations.  In addition, defendant does not dispute plaintiff's claim that she was unrepresented by legal counsel at the time of the Commissioner's initial August 6, 2000 denial and all those issued prior thereto. Accordingly, the undersigned finds plaintiff has alleged a colorable constitutional claim.

Defendant argues, however, that despite plaintiff's allegations of lack of mental capacity to protect her interests, she was able to file applications for disability insurance benefits in 1993, 1996 and 2000.  The claimed mental impairment though need not "'totally incapacitate' the claimant, but merely . . . 'limit [his]

REPORT AND RECOMMENDATION
Page - 7

1  ability to do things for him/herself.'" Udd, 245 F.3d at 1101 (quoting Social Security Ruling 91-5p). Thus,
2  the mere fact that plaintiff may have been able to file an application in each of the above three years does
3  not alone necessarily mean that she did not lack "the mental capacity to understand the procedures for
4  requesting review." Id. at 1099.

5  Lastly, defendant asserts "[t]his is not the case were an unrepresented mentally challenged claimant
6  was not aware of the appeals process." Defendant's Response to Plaintiff's Motion to Strike Portions of
7  Declaration of A. Yvette Dunaway and Reply to Plaintiff's Response to Motion to Dismiss, p. 6. Rather,
8  defendant points to plaintiff's statement that "since 1985 her husband took care of her and any paperwork
9  that needed to be taken care of." Id., p. 5; see also Declaration of Desiree Mattison, p. 1. The undersigned,
10 however, finds this argument wholly unpersuasive.

11 The fact that plaintiff's husband may have helped her with any or all of the paperwork relating to her
12 prior applications is not pertinent to the immediate issue here. This is because "[w]here a claimant does not
13 have a legal guardian or representative payee, it is the mental capacity of the claimant that determines
14 whether the requirements of due process have been fulfilled." Udd, 245 F.3d at 1100 n.4 (finding irrelevant
15 to resolution of claimant's claim fact that claimant's mother and girlfriend assisted him in applying for
16 benefits) (citing to Culbertson v. Sec'y of Health & Human Servs., 859 F.2d 319, 324 (4th Cir. 1988)
17 (rejecting argument that because claimant's father had filed original benefits application for his daughter, his
18 competence satisfied meaningful notice requirement)). There is no evidence, furthermore, that plaintiff's
19 husband was ever her legal guardian or representative payee.

20 Having found that plaintiff has sufficiently alleged a colorable constitutional claim, and therefore that
21 the Court does have subject-matter jurisdiction to review this case, the question remains as to whether the
22 denial of plaintiff's prior applications constituted a violation of her due process rights. "It is axiomatic that
23 due process requires that a claimant receive meaningful notice and an opportunity to be heard before his
24 claim for disability benefits may be denied." Udd, 245 F.3d at 1099 (citing Mathews v. Eldridge, 424 U.S.
25 319, 333 (1976)). Thus, where a claimant "lacked the requisite mental capacity at the time of the adverse
26 benefits decision," the denial or termination of benefits "constitutes a due process violation." Udd., 245
27 F.3d at 1100 (citing Evans, 110 F.3d at 1483).
28

  C. <u>Medical and Other Evidence Provided by Plaintiff</u>

Plaintiff has presented evidence that she injured herself in the past and that she has experienced at least some psychological difficulties during subsequent years. For example, the evidence does indicate that she fell and hit her head at work in early May 1985, and that thereafter reported suffering from seizures. <u>See</u> Declaration of Desiree Mattsion ("Mattison Declaration"), p. 1; Exhibits 1, pp. 2-3, Exhibit 2, p. 2, attached to Declaration of Charles W. Talbot ("Talbot Declaration"). With respect to plaintiff's claim that she suffers from an impairment that has resulted in an inability to understand the procedures for requesting review during the period since her injury, however, the evidence is mixed at best.

In early November 1987, plaintiff complained during an independant medical examination that her "memory was spotty and not normal." Exhibit 8, p. 4, attached to Talbot Declaration. Such "memory problems," however, "were not well substantiated on the multiple mental status tests that were given" at the time. <u>Id.</u> In early December 1987, neuropsychological testing was performed, during which plaintiff was tested "in the borderline mentally retarded/low average category." <u>Id.</u> Some problems also were noted in "cognitive inflexibility." <u>Id.</u> While she "complained of diminished writing capacity, transient confusion, [and] long-term memory loss," this "pattern of memory deficit" was noted to be "extremely unusual for people with seizure history or for closed-head injury." <u>Id.</u>

More specifically, "[g]iven her overall IQ, . . . no loss of functioning" was felt to be present, and her "[m]emory functioning was essentially within anticipated levels, or better, . . . with no significant difficulty with memory consolidation." <u>Id.</u> Attention and concentration also were found to be essentially normal. <u>Id.</u> As such, plaintiff's "complaints of memory deficits and confusion were not verified by this evaluation," and the "final impression was, 'Normal neuropsychological evaluation.'" <u>Id.</u>

In late September 1990, plaintiff reported that she was recently terminated from a job, not because of any mental incapacity, but due to having seizures. Exhibit 2, p. 7, attached to Talbot Declaration. While plaintiff claims to be subject to long-standing memory problems, she further reported at the time that she spent her day quilting and doing crossword puzzles. <u>Id.</u> Indeed, a mental status evaluation performed then revealed her to be "totally normal in judgment, abstraction and memory." <u>Id.</u> Thus, the evaluator "did not feel that she had a psychiatric disorder." Exhibit 3, p. 4, attached to Talbot Declartion.

Despite plaintiff's allegations that she has not been able to take care of herself since her injury, she

REPORT AND RECOMMENDATION
Page - 9

reported that she was interested in training to be a paralegal during a psychiatric evaluation conducted in late July 1995. Exhibit 4, p. 13, attached to Talbot Declaration. She also reported that she took care of pets and plants in her home, that she did some cooking, that she liked to read, and that she had some hobbies, including doing embroidery. Id., p. 14. It was noted that she had never received psychiatric treatment. Id., p. 13. On the other hand, she was found to be "definitely depressed" and "poorly informed" intellectually. Id., p. 15. She was diagnosed with a personality disorder with "marked dependant aspects," and noted to be obviously helpless in her life and dependant on other people. Id., p. 16.

A neuropsychological evaluation was performed in early and mid-November 1995, during which plaintiff was placed in the "low average range" of mental ability. Exhibit 5, p. 2, attached to Talbot Declaration. Testing also revealed "moderate impairment of brain functions," indicating "significant limitations" in those functions that were "likely to have a substantial impact upon adaptation to problems of everyday life." Id. This included "diminished memory," "difficulties in concentration, and limitations in evaluating problem situations in a way that" would "likely lead to their resolution." Id. Therefore, "while not totally incapacitating," these problems were "substantial in scope and of considerable significance in practical terms." Id. It also was thought "entirely likely" that her "head injury" might well have impacted her testing and "resulted in significant disability." Id.

Plaintiff underwent temporal lobe resection surgery in July 1997, and in early March 1998, reported that since her surgery she noted having "'problems' with thinking," and having "trouble saying the words she wants to say." Exhibit 8, p. 9, attached to Talbot Declaration. In a mental status examination performed at the time she was noted to be "extremely simple" and "extremely slow," as well as "somewhat helpless." Id., p. 15. She was diagnosed as having a mood disorder due to a general medical condition. Id. The following conclusions also were made:

> It [sic] felt on a more probable than not basis the claimant has had severe emotional trauma due to the onset of a severe seizure disorder leading to temporal lobectomy. She appears to have a depression secondary to her medical condition which would not be unexpected. . . .
>
> It is felt the depression is a further barrier for her to return to work, although it is not clear that she will ever be capable of performing any type of job regardless of whether or not depression is treated. . . .

Id., p. 16. Plaintiff was felt to be "extremely limited in her ability to perform any type of employment due to significant cognitive impairments," along with other physical impairments, and to be unable to "perform any

REPORT AND RECOMMENDATION
Page - 10

type of work" that required "any significant cognitive functioning." <u>Id.</u>, p. 17.

In the declaration she submitted for this case, plaintiff states that her memory "is not very good," that she has "a lot of trouble getting along every day," that her husband took care of her and all necessary paperwork prior to their divorce, and that she was unable to live by herself after the divorce. Mattison Declaration, p. 1. In another declaration submitted for this case, plaintiff's daughter states that since she fell and hit her head, plaintiff has been unable "to live alone or take care of herself" and has had problems with remembering to pay bills. Declaration of Bambi Brown, p. 1.

Plaintiff's and her daughter's statements notwithstanding, the medical evidence submitted to the Court indicates that while plaintiff complained of cognitive problems soon after her 1985 injury, no such problems were medically confirmed until late July 1995 at the earliest. Thus, there is no objective medical evidence in the record that confirms the presence of significant mental impairments or limitations prior to that date, although subsequent medical documentation does reference cognitive difficulties of longstanding origin, likely dating back to the original head injury she suffered in 1985. In other words, while certainly there is some evidence of significant mental dysfunction that could have interfered with plaintiff's ability to understand the procedures for requesting review, the record does not necessarily show that such issues have been present consistently or at all times since 1985.

IV.     <u>Remand to the Commissioner for a SSR 91-5p Hearing</u>

That being said, or rather as a result thereof, the undersigned finds it more appropriate to remand this matter to the Commissioner for re-consideration of whether plaintiff's earlier applications should be re-opened due to her alleged mental incapacity and lack of representation at the time pursuant to SSR 91-5p. The Commissioner issued SSR 91-5p to clarify its policy on "establishing good cause for missing the deadline to request" administrative review of the denial of a disability application, and to "avoid the improper application of res judicata or administrative finality" when the evidence in the record "establishes that a claimant lacked the mental capacity to understand the procedures for requesting review." 1995 WL 208067 *1. Specifically, SSR 91-5p reads in relevant part as follows:

> When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination . . . and the claimant had no one legally responsible for prosecuting the claim (e.g., . . . legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how

>much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.
>
>The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.
>
>In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:
>
>    . . . any mental or physical condition which limits the claimant's ability to do things for him/herself.
>
>If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence. The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case. The adjudicator will resolve any reasonable doubt in favor of the claimant.
>
>If the adjudicator determines good cause exists, he or she will extend the time for requesting review and take the action which would have been appropriate had the claimant filed a timely request for review. A finding of good cause will result either in a determination or decision that is subject to further administrative or judicial review of the claim, or a dismissal (for a reason other than late filing) of the request for review, as appropriate.

Id. at *2. In addition, in an SSR 91-5p determination the ALJ must "resolve any reasonable doubt in the claimant's favor." Udd, 245 F.3d at 1101 (citing Hill v. Callahan, 962 F.Supp. 1341, 1346 (D.Or. 1997) (finding that due process required reopening because there was reasonable doubt claimant had mental capacity to understand procedures for requesting review)).

Given the mixed evidence noted above regarding the presence of a mental impairment resulting in plaintiff's alleged incapacity with respect to requesting review, and the fact that the Commissioner has yet to address this issue herself at the administrative level, the undersigned finds it inappropriate for this Court to make the first attempt to do so. The Commissioner has issued regulations, which, as noted above, SSR 91-5p seeks to clarify, regarding requests for extensions of time for seeking administrative review. See 20 C.F.R. §§ 404.909(b), 404.911, 404.925(c), 404.933(c), 404.957(c)(3), 404.968(b), 404.982. For example, 20 C.F.R. § 404.909(b) reads as follows:

>Extension of time to request a reconsideration. If you want a reconsideration of the initial determination but do not request one in time, you may ask us for more time to request a reconsideration. Your request for an extension of time must be in writing and must give the reasons why the request for reconsideration was not filed within the stated time period. If you show us that you had good cause for missing the deadline, we will extend the time period. To determine whether good cause exists, we use the standards explained in [20 C.F.R.] § 404.911.

REPORT AND RECOMMENDATION
Page - 12

1  Section 404.911(a) states in relevant part that in determining whether a claimant has shown "good cause for
2  missing a deadline to request review," any mental limitations which prevented the claimant "from filing a
3  timely request or from understanding or knowing about the need to file a timely request for review" will be
4  considered.

5  The record reveals that plaintiff, through her counsel, made such a request regarding the previous
6  denials of her 1993, 1996 and 2000 applications, wherein plaintiff's cognitive impairments resulting in her
7  alleged inability to understand the administrative appeals process is expressly mentioned. See Request for
8  Reconsideration, dated October 5, 2000, Exhibit 2 attached to Dunaway Declaration. Despite the presence
9  of this written request in the administrative record, neither the Commissioner at the reconsideration level
10 nor the ALJ at the hearing level appears to have made any SSR 91-5p determination.[1] See Exhibits 2 and 4
11 attached to Dunaway Declaration. The undersigned finds that it to have been error to fail to do so, and thus
12 recommends that the Court remand this matter to the Commissioner to correct that error.

13 CONCLUSION

14 Based on the foregoing discussion, the Court should deny plaintiff's motion to dismiss (Dkt. #8),
15 and remand this matter to the Commissioner to make a determination in accordance with SSR 91-5p and
16 the findings contained herein. In addition, also based on the foregoing discussion, the Court should deny
17 plaintiff's motion to strike portions of the declaration of A. Yvette Dunaway (Dkt. #13).

18 Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
19 the parties shall have ten (10) days from service of this Report and Recommendation to file written
20 objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those
21 objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit
22 imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 1,**

---

[1] In dismissing plaintiff's request for review, the ALJ relied solely on 20 C.F.R. §§ 404.987-404.989, which address, and set forth the standard for, making requests to re-open adverse administrative determinations. See Order of Dismissal, Exhibit 4, attached to Dunaway Declaration. Subsection (a) of 20 C.F.R. § 404.987 provides in relevant part that "[g]enerally," if a claimant is "dissatisfied with a determination or decision made in the administrative review process," but does "not request further review within the stated time period," the claimant will lose his or her "right to further review and that determination or decision becomes final." Nothing in 20 C.F.R. §§ 404.987-404.989, however, prohibits requests for an extension of time to request further review as contemplated by 20 C.F.R. §§ 404.909(b), 404.911, 404.925(c), 404.933(c), 404.957(c)(3), 404.968(b), 404.982, and SSR 91-5p, which, as discussed above, appears to have been the basis for plaintiff's most recent request for reconsideration.

REPORT AND RECOMMENDATION
Page - 13

1  **2006**, as noted in the caption.

2  DATED this 3rd day of November, 2006.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge